IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 2:15-CR-080 |
| Plaintiff, | : | Case No. 2:14-CR-127 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| ROBERT B. LEDBETTER, *et al.* | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter comes before the Court on Defendant Christopher A. Harris's motion to suppress evidence, (Doc. 598). Harris seeks to suppress "any evidence obtained in violation of [his] rights under the Fourth Amendment of the United States Constitution, as well as any and all fruits of said evidence, including, but not limited to any statements by the Defendant." (*Id.*). Harris, however, does not identify a single factual dispute regarding any searches or seizures, nor does he specify what evidence (if any) the Government obtained unlawfully. Accordingly, the Court **DENIES** Harris's motion to suppress.

### I. BACKGROUND

Harris is one of twenty defendants facing trial for his alleged involvement in the Short North Posse, an alleged criminal organization that operated the Short North area of Columbus, Ohio, from 2005 until 2014. Harris faces nine charges, including one count of RICO conspiracy, four counts of murder in aid of racketeering, three counts of murder through use of a firearm during and in relation to a drug trafficking crime, and one count of murder through use of a firearm during and in relation to a crime of violence. Harris is scheduled to stand trial with the first group of defendants, beginning April 4, 2016.

1

Harris filed a motion to suppress evidence under the Fourth Amendment on July 6, 2015. (*Id.*). In that motion, Harris vaguely requested that this Court suppress "any evidence obtained by law enforcement during searches and/or seizures made of Mr. Harris, his automobile, his bicycle, [and] his property[,] including but not limited to his cell phone, and/or his home" on sixteen enumerated dates. (*Id.*). All of the dates Harris mentioned were taken from the Superseding Indictment (Doc. 300), the Government's Notice of Intent to Rely on Evidence (Doc. 565), and the 2015 Indictment in joined Case Number 2:15-cr-080 (*see* Doc. 595), and all of the dates correspond to dates on which Harris allegedly committed the crimes in question, not to dates on which searches or seizures necessarily occurred.

In short, and although it is difficult to discern from the motion itself, Harris seemed to request that the Court suppress *all* evidence that was obtained from him or his property concerning any criminal activity in which he is alleged to have engaged in this case. (*See* Doc. 598 ("Harris submits that evidence was obtained on the aforementioned dates either without a warrant and with no applicable exception, or pursuant to a warrant lacking probable cause. . . . In the event the Government seeks to rely upon evidence at trial which was obtained on dates different than those listed . . . Harris respectfully requests suppression of this evidence which was seized with or without a warrant.")). Harris also requested an evidentiary hearing "to further develop the facts submitted herein." (*Id.*). Harris, however, alleged *no* facts in his motion other than the fact that he has been charged with crimes and overt acts that allegedly occurred on sixteen different days, spanning the length of three years. (*Id.*). Apparently, Harris felt that by filing a motion to suppress, any evidentiary burden shifted to the Government to explain *what* evidence it obtained, *when* the Government obtained that evidence, and *why* that evidence should not be excluded from trial. (*See id.*).

The Government pressed Harris on these issues in its response in opposition, (Doc. 613). First, the Government noted that Harris did little more in his motion than identify the broad parameters of Fourth Amendment jurisprudence. (*Id.* ("Harris has made no attempt to explain how his constitutional rights were violated on the dates in question, nor has he identified a single piece of evidence that he believes should be suppressed. . . . Instead, he makes sweeping, conclusory statements that are not grounded in the facts of this case or in controlling legal authority.")). Second, the Government opposed Harris's bid for an evidentiary hearing, citing Sixth Circuit authority for the proposition that to obtain a hearing, "the defendant's motion must be 'sufficiently definite, specific, detailed, and non-conjectural to conclude that *contested issues of fact* going to the validity of the search are in question.'" (*Id.* (quoting *United States v. Abboud*, 438 F.3d 554, 57 (6th Cir. 2006))).

Harris subsequently filed a reply brief, in which he held fast to the format of his initial motion to suppress. (Doc. 645 ("Harris believed this format was the best way to preserve his Fourth Amendment rights and [to] put the Government on notice of Harris challenging the lawfulness of any search or seizure conducted on the listed dates.")). Harris did, however, briefly allude to four instances that he believes amounted to an unconstitutional search or seizure: (1) a search executed at 1338 North Fifth Street, Columbus, Ohio, on or around March 15, 2006, in connection with Overt Act Nineteen; (2) a subpoena of his cellular phone records in November 2007, served in connection with Counts Seven and Eight and Overt Act Forty-Six; (3) a warrantless search incident to arrest on or around July 19, 2008, as well as a follow-on search of his cell phones and seizure of his DNA pursuant to warrants issued in connection with Overt Act Fifty-Eight; and (4) an investigative stop on or around July 24, 2007, in connection with Unindicted Overt Act Ten from the Government's Notice of Intent, (Doc. 565).

## II.  STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.  To comply with the Fourth Amendment, law enforcement personnel generally must obtain a warrant, supported by probable cause, from a neutral and detached judicial officer before searching people or their houses, papers, and effects for evidence of criminal wrongdoing.  *Riley v. California*, 134 S. Ct. 2473, 2482 (2014); *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011).  These requirements "guarantee[] the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their discretion."  *See Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 613-14 (1989) (quotation omitted).  Searches and seizures conducted without a warrant are presumptively unreasonable.  *King*, 131 S. Ct. at 1856.  Nevertheless, because "the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" the warrant requirement is subject to several exceptions.  *Id.* (quotation omitted).

Defendants who seek to suppress evidence allegedly obtained in violation of the Fourth Amendment bear the burden of proof.  *See, e.g.*, *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) ("It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." (quotation omitted)); *United States v. Blakeney*, 942 F.2d 1001, 1015 (6th Cir. 1991) ("In the context of a motion to suppress, the moving party has the burden of establishing that the evidence was secured by an unlawful search.").  The Sixth Circuit has made clear that this burden of proof extends to both "the burden of production and persuasion." *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014) ("The defendant who requests suppression bears the burden of production and persuasion.").

Finally, the decision to grant an evidentiary hearing on a motion to suppress rests in the discretion of the district court. *United States v. Goodwin*, 552 F. App'x 541, 548 (6th Cir. 2014). District courts need only conduct an evidentiary hearing "when the defendant has set forth contested issues of fact that bear upon the legality of the search." *Id.* (quotation omitted). To satisfy this burden, the defendant's motion must be "sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that *contested issues of fact* going to the validity of the search are in question." *Abboud*, 438 F.3d at 577 (quotation omitted). Put differently, "[a] defendant is not entitled to an evidentiary hearing where his arguments are entirely legal in nature." *United States v. Lawhorn*, 467 F. App'x 493, 495 (6th Cir. 2012).

### III. ANALYSIS

As a threshold matter, the Court finds Harris's motion to suppress problematic because he failed to identify a single search or seizure that may have been unconstitutional and did not specify what evidence (if any) the Government obtained unlawfully as a result of those searches or seizures. (*See* Doc. 598). In the absence a dispute—factual or otherwise—the Court has little to rule upon. To be sure, Harris ultimately (albeit briefly) pointed to four potentially unlawful searches or seizures in his reply brief. (*See* Doc. 645). But as this Court has held, "[i]t is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in opposition." *Curcio Webb LLC v. Nat'l Benefit Programs Agency, Inc.*, 367 F. Supp. 2d 1191, 1207 n.28 (S.D. Ohio 2005) (Marbley, J.) (quotation omitted); *see also Bishop v. Oakstone Academy*, 477 F. Supp. 2d 876, 889 (S.D. Ohio 2007) (Marbley, J.) (same). Putting aside these procedural hurdles, even if the Court were to construe Harris's motion to suppress generously—to encompass the searches and seizures he finally pointed to on reply—his motion still fails for the reasons described below.

5

**A. The Court Will Not Suppress Evidence from the March 15, 2006 Search.**

Harris first challenges the March 15, 2006 search of his person, during which law enforcement personnel recovered $1,913.00 in cash. As the discovery that the Government has provided explains, officers from the Columbus Police Department (CPD) encountered Harris during a drug trafficking investigation. On March 13, 2006, and March 15, 2006, respectively, a confidential informant working with CPD detectives conducted controlled buys of crack cocaine from individuals at 1338 North Fifth Street in Columbus, Ohio. At least three males, two of whom were armed with handguns, were involved in the transactions. Shortly after the second controlled buy, the police executed a search warrant issued by the Franklin County Municipal Court. During the search of the residence and its occupants, officers discovered crack cocaine, marijuana, drug paraphernalia (including digital scales), over $5,000 in cash, and six firearms. Harris was present at the residence when police executed the warrant. Officers seized $1,913.00 in cash from the pocket of Harris's pants.

Harris challenges this search on two grounds. He first argues that the underlying search warrant and supporting affidavit were not included in discovery. Harris is partially correct; the Government omitted the search warrant and affidavit from its initial discovery production. According to the Government, those six pages were "accidentally scanned backwards, meaning that [they] appeared as blank pages in the discovery package for Overt Act No. 19." (Doc. 614). Nevertheless, when one of Harris's co-defendants, Thomas E. Coates, brought this matter to the Government's attention in *his* motion to suppress, the Government quickly corrected the error and produced the relevant documents, both to defense counsel and in a public filing on the Court's docket. (*See* Doc. 614, Ex. A). As a result, Harris and his counsel had the information they needed prior to filing their reply brief on July 6, 2015.

6

Harris next argues that officers "presumably had no warrant to search Harris's person, thus shifting the burden to the Government to show why a warrant exception applies to the search of his person" while he was at 1338 North Fifth Street. (Doc. 645). The warrant, issued by the Franklin County Municipal Court, belies this argument. The warrant expressly provided police the authority to (1) search for evidence of criminal activity (including drugs, drug paraphernalia, drug proceeds, and weapons) at the residence *and* (2) search "*any person or persons at such premises* or curtilage, *identities known or otherwise*." (Doc. 614, Ex. A) (emphasis added). Thus, when the police searched Harris's person and seized evidence from him on March 15, 2006, they did so under the express authority of a search warrant. Harris does not challenge the validity of the warrant itself. Therefore, his motion to suppress evidence obtained from the March 15, 2006 search fails.

**B. The Court Will Not Suppress Evidence from the Subpoena of Harris's Phone Records.**

Harris next challenges the subpoena of his cell phone records in connection with the October 6, 2007 murder of Marcus Peters. Harris alleges as follows:

> [T]he discovery provided to date mentions a subpoena, not a warrant, being used to obtain Harris's phone information. However, the discovery does not indicate what information was obtained, or if Harris's phone was subsequently seized and searched. The Government presumably knows what information was obtained, if the phone was searched, and if it intends to rely upon evidence obtained regarding the phone at trial, and should provide that information at an evidentiary hearing.

(Doc. 645). Here again, Harris has it wrong. In connection with its investigation into the Peters murder, the CPD provided a subpoena to Nextel Communications for "Subscriber Information and [a] detailed call history for the dates of October 4, 2007 through October 7, 2007[,] to include cell tower information along with addresses for the towers," for Christopher Harris's phone number. The Franklin County Municipal Court issued the subpoena on November 4, 2007, and Nextel responded to the CPD with the records requested on November 13, 2007.

7

The Government provided *all* of this information to the defendants, including the subpoena and Nextel's detailed response, in its discovery packet for the Marcus Peters homicide. The PDF containing Christopher Harris's subpoena and phone records spans some eighty-eight pages and includes basic subscriber information, call records, and historical cell site location data. Thus, Harris's allegation that the discovery produced does not indicate what information was obtained from the subpoena is frivolous, as is his contention that the Government needs to preview its case for him at an evidentiary hearing. *See United States v. Giacalone*, 853 F.2d 470, 483 (6th Cir. 1988) ("Because defendants had all the information they needed to make a [suppression] challenge if one were warranted, the district court clearly did not abuse its discretion in denying an evidentiary hearing . . . .").

Furthermore, Harris mounts no real factual or legal challenge to the subpoena of his phone records. But even if Harris *had* challenged the subpoena or the Government's potential use of his phone records at trial, his challenge would come up short. This is so because Harris cannot demonstrate that he had a reasonable expectation of privacy in those phone records. Typically, "the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time the subpoena is issued." *United States v. Miller*, 425 U.S. 435, 444 (1976). The reason for this rule is simple: "[W]hen an individual reveals private information to another, he assumes the risk that this confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that information." *United States v. Jacobsen*, 466 U.S. 109, 117 (1984). Thus, to assert a Fourth Amendment challenge to a subpoena issued to a third party, a defendant must "demonstrate that he had a legitimate expectation of privacy attaching to the records obtained." *United States v. Phibbs*, 999 F.2d 1053, 1077 (6th Cir. 1993).

8

Under this framework, courts consistently have concluded that individuals lack a reasonable expectation of privacy in telephone records. *E.g.*, *Smith v. Maryland*, 442 U.S. 735, 745 (1979) (upholding use of pen register because defendant did not have reasonable expectation of privacy "in the phone numbers he dialed"); *United States v. Clenney*, 631 F.3d 658, 666 (4th Cir. 2011) (affirming denial of motion to suppress cell phone records because "phone customers have no constitutionally cognizable privacy interests in basic subscriber information"); *Phibbs*, 999 F.2d at 1077 (holding that defendant lacked standing to challenge subpoenas for telephone records and credit card statements because he did not have "an actual and a justifiable privacy interest in any of these materials").

Courts likewise have determined that people do not have a legitimate expectation of privacy in historical cell site or other historical location-tracking information. *United States v. Skinner*, 690 F.3d 772, 777, 781 (6th Cir. 2012) (affirming denial of motion to suppress because defendant had no legitimate expectation of privacy in GPS data emitted by his cell phone); *United States v. Forest*, 355 F.3d 942, 950-52 (6th Cir. 2004) (concluding that defendant had no legitimate expectation of privacy in cell-site data), *judgment vacated on other grounds by Garner v. United States*, 543 U.S. 1100 (2005); *Gipson v. Sheldon*, No. 3:13-cv-1997, 2015 WL 1980244, at *10 (N.D. Ohio May 1, 2015) ("[T]here is no reasonable expectation of privacy in cell phone records . . . or in cell site location information."); *United States v. Graham*, 846 F. Supp. 2d 384, 389 (D. Md. 2012) (holding that defendants "do not have a legitimate expectation of privacy in the historical cell site location records acquired by the government"); *United States v. Jones*, 908 F. Supp. 2d 203, 211 & n.9 (D.D.C. 2012) (same) (collecting cases). Therefore, even if Harris *had* challenged the use of his cellular records obtained under the Government's subpoena, his challenge would fail under the current state of the law.

## C. The Court Will Not Suppress Evidence Stemming from the July 19, 2008 Search.

Harris next challenges a July 19, 2008 search incident to his arrest for robbery, sexual assault, and the unlawful discharge of a firearm. The discovery produced thus far indicates that, in the early morning of July 19, 2008, Harris and several other men entered a home, robbed and sexually assaulted its occupant, and, when confronted by the occupant's boyfriend, fled the scene and fired upon both victims. Harris and the other men then drove off in a black van and, when CPD officers gave chase, began throwing money, a gun, and other items from the van. When the van finally came to a stop, Harris and the other occupants fled on foot. In the process, they scattered money and other items about the area. CPD officers ultimately apprehended and arrested Harris, and the victim subsequently identified him as one of the men who robbed her. CPD officers then obtained search warrants from the Franklin County Municipal Court to search Harris's cell phones and to take DNA swabs from his person in connection with the robbery and assault. Harris later pleaded guilty in state court to three counts for his involvement in the break-in: (1) aggravated burglary (with a firearm specification); (2) gross sexual imposition; and (3) discharging a firearm at or into a habitation. The Franklin County Court of Common Pleas sentenced Harris to seventeen years' imprisonment in connection with his guilty plea.

Harris challenges the search incident to his arrest and the subsequent searches of his phones and acquisition of DNA evidence pursuant to court-issued warrants as follows:

> [T]he discovery provided to date mentions officers arresting Harris for an incident taking place at 6060 Brook Bay Court in Canal Winchester. Without a warrant, the officers searched Harris's person and collected evidence. A search warrant was later obtained for Harris's DNA and to search Harris's phone that had been seized. Harris contests as unreasonable the lawfulness of his arrest and the subsequent search of his person, as well as the search of his phone and the seizure of his DNA. An evidentiary hearing will further develop this issue.

(Doc. 645).

As Harris's reply brief makes clear, he has not "set forth contested issues of fact that bear upon the legality of the search[es]." *See Goodwin*, 552 F. App'x at 548 (quotation omitted). Indeed, Harris has not set forth *any* facts—contested or otherwise—that bear upon the legality of the searches. Nor, for that matter, has Harris stated what evidence (if any) this Court should exclude under the Fourth Amendment. An evidentiary hearing is not required under these circumstances because Harris's motion to suppress was not "sufficiently definite, specific, detailed, and non-conjectural." *Abboud*, 438 F.3d at 577 (quotation omitted).

At most, Harris raises entirely legal (and conclusory) arguments regarding the lawfulness of the searches. Those arguments fail in any event. As to the initial search, "[t]he Supreme Court [has] held that searches of persons incident to a lawful arrest require no additional justification, beyond the establishment of probable cause for arrest." *United States v. Smith*, 549 F.3d 355, 360-61 (6th Cir. 2008) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)). Thus, "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Id.* at 361 (quotation omitted). In other words, "[o]nce a lawful arrest has been made,"—*i.e.*, one supported by probable cause—"the police officer is permitted to search the individual." *United States v. Campbell*, 486 F.3d 949, 955 (6th Cir. 2007). Here, the arresting officer, Sargent Fautz: (1) heard a police dispatch concerning a 911 robbery call, including a description of the van in which the perpetrators escaped; (2) witnessed a van matching that description fleeing a nearby area at a high rate of speed; (3) saw the occupants of the van throwing items from it; (4) observed the van finally stop, at which point all of the occupants, dressed in black, exited the van and ran on foot; and (5) apprehended Harris as one of the suspects who fled on foot.

Surely the arresting officer had, at that moment, reasonably trustworthy facts and circumstances "to warrant a prudent person in believing that [Harris] had committed or [was] committing an offense," thus providing probable cause for his arrest. *See id.* at 359 (quotation omitted); *see also United States v. Long*, 464 F.3d 569, 573-74 (6th Cir. 2006) (holding that a 911 emergency call provided sufficiently reliable information to warrant a *Terry* stop of a vehicle fitting that description); *United States v. Williams*, 475 F. App'x 36, 39-40 (6th Cir. 2012) (holding that reasonable suspicion justifying a *Terry* stop "'ripens' into probable cause" when the individual flees or attempts to flee); *United States v. McCoy*, 155 F. App'x 199, 201-02 (6th Cir. 2005) (holding that a matching description plus flight "created probable cause to support the arrest"); *United States v. Dotson*, 49 F.3d 227, 231 (6th Cir. 1995) (holding that police officer's reasonable suspicion that suspect was involved in criminal activities, coupled with suspect's efforts to flee, "established probable cause to arrest [him]"). Considering the totality of the circumstances, any search of Harris incident to his arrest was lawful. Therefore, "the fruit of the poisonous tree doctrine does not apply to exclude any of the evidence obtained as a result of the arrest." *United States v. Kendricks*, 127 F. App'x 836, 843 (6th Cir. 2005).

The same holds true for the follow-on searches of Harris's cell phones and the seizure of hi DNA under search warrants issued by the Franklin County Municipal Court. Harris challenges these searches on the basis of lack of probable cause. To demonstrate probable cause sufficient to justify a search warrant, "the proponent must submit an affidavit that indicate[s] a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (quotation omitted). A judicial officer "need only find reasonable grounds for belief that evidence will be found" to justify a search warrant. *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) (quotation omitted).

There are three warrants at issue: (1) a July 24, 2008 warrant authorizing police to collect DNA evidence from Harris "for the purpose of comparing and testing said substance with the evidence collected from the crime scene, along with other fruits, instrumentalities and evidence of the crime[s]"; (2) a September 4, 2008 warrant authorizing police to search Harris's Motorola I-736 phone for "evidence of the crime of Rape; Aggravated Burglary and Kidnapping"; and (3) a separate warrant from September 4, 2008, authorizing police to search Harris's Motorola I-880 phone for similar evidence.  The supporting affidavits for each warrant are nearly identical.

The affiant, CPD Detective Shannon David, swore to the following: (1) several males forced entry into a residence around 4:15 a.m. on July 19, 2008; (2) the suspects forced the female homeowner onto the ground and threatened to kill her before demanding money and jewelry; (3) one of the suspects held the victim on the floor and forcibly penetrated her vagina with his fingers; (4) the same suspect placed a handgun between the victim's legs and rubbed it against her vagina before doing the same with a pair of scissors; (5) nearly an hour into the assault, the victim's boyfriend returned home; (6) the suspects then fled and, according to the victim, fired several gunshots in her direction before escaping in a black, family-style van with a white stripe; (7) the victim's boyfriend called 911, advised the dispatcher of the assault, and provided a description of the van; (8) upon hearing the dispatch, police observed a van matching that description in a nearby neighborhood; (9) the van subsequently fled at a high rate of speed as the occupants threw what was later identified as a gun and other items from the van; (10) the van finally stopped, at which point all of the occupants ran away from police on foot; (11) officers apprehended three of the suspects, including Harris; (12) officers also recovered money and a stolen gun from the area in which the suspects fled on foot; and (13) shortly after the arrests, the victim identified both the van (by its markings) and the suspects (by their clothing).

Viewed under the totality of the circumstances, the four corners of these affidavits support a finding of probable cause. These were not, for example, "bare bones" affidavits or affidavits supported by hearsay statements from unreliable confidential informants. *See United States v. Williams*, 224 F.3d 530, 532-33 (6th Cir. 2000). Nor did the affidavits depend on "stale" information. *See United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010). To the contrary, the affidavits contained specific factual allegations from both the victim and police officers, describing, in detail, crimes that recently occurred. Under these circumstances, and in light of the "practical, common-sense decision" that judicial officers must make when evaluating search-warrant affidavits, the Court finds probable cause sufficient to justify the warrants. *See United States v. Smith*, 510 F.3d 641, 652 (6th Cir. 2007).

There was more than a "fair probability" that evidence of the crimes in question would be found both in Harris's DNA and in his cell phones, which police seized upon his arrest. *See United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008). For example, DNA evidence could link Harris to the crime scene, the victim, the money that was stolen, the getaway van, or one of the firearms that the perpetrators later discarded. *See Maryland v. King*, 133 S. Ct. 1958, 1966 (2013) ("[L]aw enforcement, the defense bar, and the courts have acknowledged DNA testing's unparalleled ability both to exonerate the wrongly convicted and to identify the guilty." (quotation omitted)); *United States v. Bonds*, 12 F.3d 540, 569-70 (6th Cir. 1993) (holding that warrant to collect DNA evidence was supported by probable cause because evidence could link suspect to murder); *United States v. Hudson*, No. 14-CR-206(2) (JNE/JJK), 2014 WL 4348241, at *1-3 (D. Minn. Sept. 2, 2014) (denying motion to suppress DNA swabs from suspect who led police on car chase because evidence could link her to cash and handguns seized; "There was probable cause to believe that Defendant's DNA would provide evidence of a crime.").

Likewise, there was a "fair probability" that evidence connecting Harris to the robbery or to the other assailants would be found in his cell phones, seized just after his arrest. *See, e.g.*, *United States v. Sims*, 508 F. App'x 452, 460 (6th Cir. 2012) (explaining that the "only probable cause necessary" to secure a warrant or wiretap for a cell phone "is that the phone itself be used in connection with an offense or commonly used by someone committing the offense"); *United States v. Crew*, No. 1:14cr107-1, 2015 WL 5095729, at *4-5 (S.D. Ohio Aug. 31, 2015) (finding probable cause to search cell phones in connection with purported gang activity and drug trafficking); *United States v. Jefferson*, No. 14-20119, 2015 WL 3576035, at *3-5 (E.D. Mich. June 5, 2015) (finding probable cause to search cell phone where affidavit established that phone belonged to suspect who was strongly connected to criminal activity, including shootings and assaults); *United States v. Gholston*, 993 F. Supp. 2d 704, 718-21 (E.D. Mich. 2014) (collecting cases) (finding probable cause to search cell phone in connection with joint robbery because phone could show coordination and pre-planning among suspects).

Even if probable cause *is* lacking, Harris's suppression argument still fails under the good-faith exception to the exclusionary rule. *See United States v. Justice*, 461 F. App'x 415, 417 (6th Cir. 2012). It would not be "entirely unreasonable" for an officer to believe that probable cause had been established to search Harris's DNA or his phones. *See id.* Nor were the facts "completely devoid of any nexus" connecting Harris's DNA and phones to the alleged criminal activity. *See id.* Because the warrants "contain[ed] no indicia of an absence of good faith in regard to either [their] application . . . or execution," the good-faith exception applies. *See Hudson*, 2014 WL 4348241, at *3 (applying good-faith exception to DNA swabs obtained in connection with warrant); *United States v. Walker*, No. 13-64-RGA, 2015 WL 3485647, at *5 (D. Del. May 29, 2015) (applying good-faith exception to search of cell phones).

**D. The Court Will Not Suppress Evidence from the July 24, 2007 Stop-And-Frisk.**

Finally, Harris challenges a July 24, 2007 stop-and-frisk.  According to Harris:

> Regarding [the] unindicted overt act allegedly taking place on July 24, 2007, the discovery provided to date mentions Harris being the subject of an investigative stop because Harris allegedly matched the description of a person who had shot at [CPD] officers.  Without a warrant, the officers detained Harris and patted him down.  ***The discovery does not indicate any evidence was seized from Harris as a result of this pat down.***  However, in the event the Government relies upon evidence that was seized from Harris, Harris contests the pat down of his person.

(Doc. 645) (emphasis added).

This Court cannot, however, conduct an evidentiary hearing, let alone grant a motion to suppress, that does not even *hint* at which evidence the defendant seeks to exclude.  *See, e.g.*, *Abboud*, 438 F.3d at 577 ("An evidentiary hearing is required only if the motion is sufficiently definite, specific, and non-conjectural to enable the court to conclude that *contested issues of fact* going to the validity of the search are in question." (quotation omitted)); *United States v. Starks*, 193 F.R.D. 624, 626 (D. Minn. 2000) ("[T]he beginning point of any Motion to Suppress should be to specify the evidence the party seeks to suppress."); *United States v. Quiroz*, 57 F. Supp. 2d 805, 823 (D. Minn. 1999) ("In motions to suppress evidence, a moving party must specify the statement or evidence which is sought to be suppressed, and articulate with clarity the factual and legal basis upon which each is sought to be suppressed."); *United States v. LaRouche Campaign*, 682 F. Supp. 623, 626-27 (D. Mass. 1987) ("Only if and when a particular item is identified as the subject of a motion to suppress and a related request for an evidentiary hearing can the court determine whether a hearing . . . should be allowed.") (admonishing counsel against requesting "open-ended evidentiary hearing[s] as to all aspects of [a] search").  To the extent Harris seeks to preserve this issue by filing a motion to suppress, he has done so.

For these reasons, Harris's motion to suppress in Case No. 2:14-cr-127 (Doc. 598) and his identical motion to suppress in Case No. 2:15-cr-080 (Doc. 15) are **DENIED**.

**IT IS SO ORDERED.**

                                                    **s/ Algenon L. Marbley**
                                                    **ALGENON L. MARBLEY**
                                                    **UNITED STATES DISTRICT JUDGE**

**DATED: October 8, 2015**